1 | Kevin L. Perry
2 | 845 Park Ave Apt 7
3 | El Centro, CA 92243
| 760-693-4306
4 | Keviboy86badboy@gmail.com
| In Pro Per
5 |
6 |
7 | UNITED STATES DISTRICT COURT
8 | DISTRICT OF COLUMBIA
9 |
10 | KEVIN L. PERRY
11 | 845 PARK AVE, APT 7
12 | EL CENTRO, CA 92243
13 | Petitioner,
14 | vs.
15 |
16 | PRESIDENT JOE BIDEN (DE)
| 1600 PENNSYLVANIA AVE NW
17 | WASHINGTON, D.C. 20500
18 | VICE PRESIDENT KAMALA D.
19 | HARRIS (CA)
| 1600 PENNSYLVANIA AVE NW
20 | WASHINGTON, D.C. 20500
21 |
| CONGRESSWOMAN NANCY
22 | PELOSI (CA)
| 1236 LONGWORTH H.O.B.
23 | WASHINGTON, DC 20515
24 |
| SENATOR ALEX PADILLA (CA)
25 | B03 RUSSELL SENATE OFFICE
| BUILDING
26 | WASHINGTON DC 20510
27 |
28 |

Case: 1:21–cv–00548 JURY DEMAND
Assigned To : McFadden, Trevor N.
Assign. Date : 3/1/2021
Description: Pro Se Gen. Civ. (F-DECK)

1
COMPLAINT

CALIFORNIA ATTORNEY
GENERAL XAVIER BECERRA
1300 I STREET, SUITE 1740
SACRAMENTO, CALIFORNIA 95814-
2954

COUNTY OF SAN DIEGO, a public
entity
1600 PACIFIC HIGHWAY
SAN DIEGO, CA 92101

FIRSTGROUP PLC
395 KING STREET
ABERDEEN
AB24 5RP

FIRSTGROUP AMERICA, INC.;
subsidiary of FIRSTGROUP PLC
600 VINE STREET, SUITE 1400
CINCINNATI, OH 45202

Respondents.

# COMPLAINT FOR RELIEF

## IN ACCORDANCE WITH 52 U.S.C. § 30109(a)(8).

Plaintiff Kevin L. Perry alleges the following:

- I am a competent adult.

- I am a veteran.

- I am a voter in the 2020 presidential election.

2
COMPLAINT

- I am a whistleblower.

- I reside in Imperial County, California.

- This is a taxpayer lawsuit.

- The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

- District courts shall have supplemental jurisdiction over all state cause of actions. **28 U.S.C. § 1367(a).**

- Venue: 52 U.S.C. § 30109(a)(8)

Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia. See **Appendix A.**


52 U.S.C. § (a)(7)(D)

Contributions made to or for the benefit of any candidate nominated by a political party for election to the office of Vice President of the United States shall be considered to be contributions made to or for the benefit of the candidate of such party for election to the office of President of the United States.

FIRST CAUSE OF ACTION

DECLARATORY JUDGMENT

28 U.S.C. § 2201(a)

COUNTY OF SAN DIEGO

FIRST GROUP AMERICA, INC.

FIRSTGROUP PLC

VICE PRESIDENT KAMALA D. HARRIS

CALIFORNIA ATTORNEY GENERAL XAVIER BECERRA

In a case of actual controversy within its jurisdiction, ... as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. Id.

I am seeking a declaratory judgment that California taxpayer dollars were illegally used by President Joe Biden (DE) and Vice President Kamala Harris (CA) as a campaign contribution during the 2020 presidential election. California Attorney General Xavier Becerra abdicated his constitutional duty to file criminal charges for theft of public funds against former California Attorney Kamala D. Harris. Had AG Becerra charged Kamala Harris with a crime, he would have ended President Biden's presidential campaign. Instead, AG Becerra received a quid pro quo from President

4
COMPLAINT

Joe Biden when President Joe Biden nominated AG Becerra to lead the Department of Health and Human Services.

As stated in **People v. Battin**, 77 Cal.App.3d 635, 652-653 (1978): "Every court which has addressed the issue to date has found the use of public funds for partisan campaign purposes improper, either on the ground that such use was not explicitly authorized, or on the broader ground that such expenditures are never appropriate. **Id at 652**. Underlying this uniform judicial reluctance to sanction the use of public funds for election campaigns rests an implicit recognition that such expenditures raise potentially serious *constitutional* questions. **Id at 652**. A fundamental precept of this nation's democratic electoral process is that the government may not "take sides" in election contests or bestow an unfair advantage on one of several competing factions. **Id at 652**. A principal danger feared by our country's founders lay in the possibility that the holders of governmental authority would use official power improperly to perpetuate themselves, or their allies in office **Id at 652**. The selective use of public funds in election campaigns, of course, raises the specter of just such an improper distortion of the democratic electoral process. **Id at 652**. To date, the judicial decisions have uniformly held that *the use of public funds for campaign expenses is as improper* in a bond issue or other non-candidate elections *as in a candidate election*. **Id at 652**. In light of this recent pronouncement by our Supreme Court, as well as the other authorities cited above, we cannot agree with defendant that the use of a publically funded staff for

5
COMPLAINT

campaign purposes is "sanctioned" by the law, written or unwritten. Id at 653. Section 424 has been on the books since 1872 and has been utilized in the past against officials who used public funds for political campaigns. Id at 653. A diversion of public services constitutes a misuse of public funds. Id at 650.

Subdivision 1 of section 424, provides: "Each officer of this state, or of any county, city, town, or district of this state, and every other person *charged with the receipt, safekeeping, transfer, or disbursement of public moneys,* who.... without authority of law, *appropriates* the same, or any portion thereof, to his own use, or to the use of another ... is punishable by imprisonment in the state prison for not less than one or more than 10 years, and is disqualified from holding any office in this state. **People v. Qui Mee Lee, 48 Cal.App.3d 516, 521 (1975).** Whereas subdivision 1 refers to the *misappropriation* of public moneys, other subdivisions of section 424 address themselves to such misconduct as the making of unauthorized loans and profits from public moneys, the keeping of false accounts concerning such funds, and the willful refusal to pay them over upon proper demand. Id.

**Improper Use of California Taxpayer Dollars and Diversion of California Public Services in Violation of California Penal Code §§ 182(a)(1) and (5) and 18 U.S.C. § 1956(a)(3)**

Former County Counsel John J. Sansone, former California Attorney General Kamala D. Harris, and current California Attorney General Xavier Becerra violated California Penal Code §§ 182(a)(1) and (5) and 18 U.S.C. § 1956(a)(3).

**California Penal Code § 182**

(a) If two or more persons conspire:

(1) To commit any crime.

(2) Falsely and maliciously to indict another for any crime, or to procure another to be charged or arrested for any crime.

(3) Falsely to move or maintain any suit, action, or proceeding.

(4) To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform those promises.

(5) To commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws.

(6) To commit any crime against the person of the President or Vice President of the United States, the Governor of any state or territory, any United States justice or judge, or the secretary of any of the executive departments of the United States.

## 18 U.S.C. § 1956(a)(3)

(a) (3) Whoever with the intent

(A) to promote the carrying on of specified unlawful activity; ... conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For the purposes of this paragraph and paragraph (2), the term "represented' means any representation made by law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

## 18 U.S.C. § 1956 (e)(4)

The term "financial transaction" means (A) a transaction which in any way or decree affects interstate or foreign commerce -

(1) involving the movement of finds by wire or other means or;

(ii) involving one or more monetary instrument, or

(iii) involving the transfer of title to any real property, vehicle vessel, or aircraft.

18 U.S.C. § 1956 (C)(5)

The term "monetary instruments" means (i) coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks and money orders, or (ii) investment securities or negotiable instrument, in bearer form, or otherwise in such form that title thereto passes upon delivery.

18 U.S.C. § 1956 (c)(7)

The term specified unlawful activity" means  (D)) an offense under section 666 (relating to theft or bribery, concerning programs receiving federal finds).

**Former San Diego County Counsel John J. Sansone**

Former San Diego County Counsel John J. Sansone was an agent of the County of San Diego. Counsel Sansone refused to recover the illegal payments First Group America, Inc. received from the County of San Diego when the County of San Diego illegally let public transportation contracts in violation of Article XI, Section 11 of the California Constitution and the San Diego County Charter.

**Article XI, Section 11 of the California Constitution**

[Article XI, Section 11 of the California Constitution provides that "the legislature may not delegate to a private person (or body) power to make, control, appropriate, supervise, or interfere with county or municipal corporations

improvements, money, or property, … or perform municipal functions.] **Yarnell v. City of Los Angeles, 87 Cal 603, 607 (1891).** The only method proposed to avoid this provision is to say that while the legislature may not do the thing prohibited, it may authorize its creatures-municipal corporations-to do it. **Id.** But the thing which the legislature is forbidden to do, it cannot delegate to another to do unless such power is given by the constitution itself. **Id.** Yarnell was cited in Howard Jarvis Taxpayer's Assn. v. Fresno Metropolitan Projects Authority (1995) 40 Cal.App.4th 1359, 1375. Yarnell has been on the books for almost 130 years.

### Legal Standard for Chartered Public Entities

In the case of a charter public entity, the charter represents the supreme law of the public entity subject only to conflicting provisions in the federal and state Constitutions, and to preemptive state law. **San Diego City Firefighters, Local 145 v. Board of Administration ETC., 206 CalApp.4th, 594, 608 (2012).** The charter operates as an instrument of *limitation and restriction* on the exercise of power over all municipal affairs which the public entity is assumed to possess. **Id** citing *Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 170.  It is well settled that a public entity may not act in conflict with its charter. **Id.** Any act that is violative of (or not in compliance with) the charter is void. **Id.** The provisions of the public entity's charter thus supersedes all municipal laws, ordinances, rules or regulations inconsistent therewith. **Id** citing *Stuart v. Civil Service Com.* (1985) 174 Cal.App.3d

201, 206; and an ordinance or resolution violative of (or not in compliance with) the public entity's charter is void." Id citing 5 McQuillin, The Law of Municipal Corporations (3d ed.) § 15:17, p. 144.]

In August of 1999, County of San Diego employees Jacquelyn Giles, Ardelia McClure, Amelia Rivera, Mary Harrigan, Maria Franco and Sara Sandez's sued County Board of Supervisors Bill Horn, Greg Cox, Dianne Jacob, Pam Slater and Ron Roberts; and San Diego County Welfare Director and Robert Ross, M.D. for hiring private contractors to provide certain services under CalWORKS violating both the San Diego County Charter (County Charter) and state law. The court agreed, ordering the agreements entered into between San Diego County (the County) and the private contractors terminated because (1) the County did not make a finding that the contractors would provide services more economically and efficiently than county civil service employees as required by the County Charter; and (2) Welfare and Institutions Code section 10619 forbids the County from contracting out to private contractors case management services under the CalWORKS program. See Giles v. Horn (2002), 100 CalApp.4th 206, 214-215. This appeal was decided on or around July 17, 2002.

Based on this lawsuit, Counsel Sansone discovered that (1) the County of San Diego Chief Administrative Officer failed to determine if County Transit Services could be provided more economically and efficiently by an independent contractor than by persons employed in the Classified Service violating Section 703.10 of the

Charter of the County of San Diego at page 8; and (2) the Board and Purchasing Agent failed to determine if County Transit Services could be provided more economically and efficiently by an independent contractor than by persons employed in the Classified Service violating Section 916 of the Charter of the County of San Diego at page 15. See **Appendix B**. County of San Diego transportation contracts are void. Counsel Sansone engaged in malfeasance in violation of California Government Code § 27642.

**California Government Code § 27642**

Whenever the board of supervisors appoints a County Counsel pursuant to this chapter, he shall discharge all the duties vested by law in the district attorney other than those of a public prosecutor.

The district attorney is authorized to bring suit against persons unlawfully receiving money to recover the money paid, plus a penalty. **County of San Diego v. Milotz, 119 CalApp.2d Supp 871 (1953)** citing Gov. Code, 26525. This action lies against the person receiving the money, not the person allowing it. Id citing **County of Santa Barbara v. Janssens, 177 Cal. 114 [169 P 1025, L.R.A. 1918C 558]; Merriam v. Board of Supervisors, 72 Cal. 517 [14 P. 137]**.

Instead of recovering the illegal payments from its independent contractors (as authorized by California Government Code § 27642) Counsel Sansone instructed the County of San Diego Board of Supervisors to transfer County public

transportation services to Metropolitan Transit Services in June of 2002 to conceal his malfeasance. This "theft issue" was submitted to the United States Attorney Office (Southern District of California) on or around June 29, 2018. See **Appendix C.** Article XI, Section 10 of the California Constitution states: "A local government body may not ... pay a claim under an agreement made without authority of law." These illegal contracts have existed in California going back to the 1970's. A small list of contracts with an approximate value of $647,724,194.00 is attached. See Appendix D. I filed a complaint with the Federal Bureau of Investigations on or around November 23, 2008. See **Appendix E.** One government entity received a **tax** refund of approximately 100 million dollars and **saved** 25 million dollars annually in social security taxes when the government entity stop "contracting out" public transportation services. **Silver v. Los Angeles County Metropolitan Transportation Authority (2000) 79 CalApp.4th 338, 343.** Former San Diego County Counsel John J. Sansone (without authority) knowingly converted taxpayer dollars to FirstGroup America, Inc. in violation of multiple sections of the California Penal Code.

**California Penal Code § 424(a)(1)**

(a) Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either:

13
COMPLAINT

1. Without authority of law, appropriates the same, or any portion thereof, to his or her own use, or to the use of another; or,

2. Loans the same or any portion thereof; makes any profit out of, or uses the same for any purpose not authorized by law; or,

3. Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to the same; or,

4. Fraudulently alters, falsifies, conceals, destroys, or obliterates any account; or,

5. Willfully refuses or omits to pay over, on demand, any public moneys in his or her hands, upon the presentation of a draft, order, or warrant drawn upon these moneys by competent authority; or,

6. Willfully omits to transfer the same, when transfer is required by law; or,

7. Willfully omits or refuses to pay over to any officer or person authorized by law to receive the same, any money received by him or her under any duty imposed by law so to pay over the same;—

Is punishable by imprisonment in the state prison for two, three, or four years, and is disqualified from holding any office in this state.

(b) As used in this section, "public moneys" includes the proceeds derived from the sale of bonds or other evidence or indebtedness authorized by the legislative body of any city, county, district, or public agency.

(c) This section does not apply to the incidental and minimal use of public resources authorized by Section 8314 of the Government Code.

*(Amended by Stats. 2003, Ch. 62, Sec. 227. Effective January 1, 2004.)*

### California Penal Code § 484(a)

Every person ... who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, and in determining the value of services received the contract price shall be the test. If there be no contract price, the reasonable and going wage for the service rendered shall govern. For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question. The hiring of any additional employee or employees without advising each of them of every labor

claim due and unpaid and every judgment that the employer has been unable to meet shall be prima facie evidence of intent to defraud.

### California Penal Code § 490a

Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word "theft" were substituted therefor.

### California Penal Code § 503

Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted.

### California Penal Code § 504

Every officer of this state, or of any county, city, city and county, or other municipal corporation or subdivision thereof, and every deputy, clerk, or servant of that officer, and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of that person's trust, any property in his or her possession or under his or her control by virtue of that trust, or secretes it with a fraudulent intent to appropriate it to that use or purpose, is guilty of embezzlement.

16
COMPLAINT

California Penal Code § 799(a)

[Prosecution for an offense punishable for ... embezzlement of public money, may be commenced at any time.]

### Vice President Kamala D. Harris

Vice President Kamala Harris profited from Counsel Sansone's violation of California Penal Code § 424(a)(1) during the 2020 presidential campaign. This is a violation of California Penal Code § 424(a)(2).

San Diego County Counsel John J. Sansone violated California Penal Code § 424(a)(1) as just discussed. During her tenure as California Attorney General, former California AG Kamala Harris violated California Penal Code § 424(a)(2) by abdicating her constitutional duty to assist District Attorneys in California with recovering taxpayer funds County and municipal entities illegally paid to independent contractors illegally providing transportation services in the state of California. This profit occurred during the 2020 presidential election.

### Article V, § 13 of the California Constitution

Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have direct supervision over every district attorney and sheriff and

over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable. Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney. When required by the public interest or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of the duties of that office.

- Goldman Sachs is trying to sell First Group America, Inc. (and Greyhound) for four billion dollars without refunding the State of California (or County of San Diego) for the illegal payments paid to First Group America, Inc. See **Appendix F.**

- These unrecovered funds will affect the selling price of FirstGroup America, Inc. The more money FirstGroup America, Inc. has to return to the County of San Diego (or state of California), the less money is available for the parent company (FirstGroup PLC) to receive from the sale of FirstGroup America, Inc.

COMPLAINT

- Goldman Sachs sits on First Group PLC's advisory Board. See **Appendix G.** Goldman Sachs has an office in London. See **Appendix G.**

- First Group PLC is the parent company of First Group America, Inc.

- First Group America, Inc. has additional illegal contracts in California with North County Transit District, Imperial County, Imperial County Transit Commission, and other public entities in California.

- Former U.S. Treasury Steven Mnuchin had 46 million dollars of Goldman Sachs stock. See **Appendix H.**

- Steven Mnuchin donated to Senator Harris' Senate campaign. **Appendix I, page 8, paragraph 4.**

- Law firm DLA Piper represents Goldman Sachs. See **Appendix J.**

- Douglas Emhoff (husband of Vice President Harris) works for DLA Piper. See **Appendix K.**

- Vice President Harris is getting her share of the unrecovered San Diego taxpayer dollars (given to FirstGroup America, Inc.) from her husband through Goldman Sachs and DLA Piper. This is money laundering in violation of 18 U.S.C. § 1956 (a)(3). This is theft and embezzlement in violation of 18 U.S.C. § 666 (a)(1)(A). This is also theft and embezzlement in violation of California Penal Code §§ 424(a), 484(a), 503, and 504. There is no statute of limitations for embezzlement of public funds in the state of

California. **California Penal Code § 799.** Former Vice President Spiro Agnew was forced to resign from office for engaging in crime while in office.

- Supervising District Attorney Peter J. Loganbach was convicted for using the resources of the DA's office to further his own personal business interest. See **People ex rel. Lockyer v. Superior Court, 99 Cal.Rptr.2d 646, 649-650 (2000).** Vice President Kamala D. Harris did the exact same thing during the 2020 presidential election. A public official owes a fiduciary duty to the public, and misuse of his office for private gain is honest services fraud. **McNally v. United States, 483 U.S. 350, 355 (1987).**

- This is also a conflict of interest for Vice President Harris in violation of California Government Code §§ 1090 and 1097. The conflict of interest occurred during the 2020 presidential election.


California Government Code §§ 1090 and 1097

- The conflict-of-interest statutes are based upon the truism that a person cannot serve two masters simultaneously which is regarded as a "self-evident truth, as trite and impregnable as the law of gravitation." **People v. Honig, 48 Cal.App.4th 289, 313 (1996).** The duties of public office demand the absolute loyalty and undivided, uncompromised allegiance of the individual that holds the office. **Id at 314.** Yet it is recognized that an impairment of impartial judgment can occur in even the most well- meaning men when their personal

economic interests are affected by the business they transact on behalf of the Government. **Id at 314.** Consequently, our conflict-of-interest statutes are concerned with what might have happened rather than merely what actually happened. **Id at 314.** They are aimed at eliminating temptation, avoiding the appearance of impropriety, and assuring the government of the officer's undivided and uncompromised allegiance. **Id at 314.** Their objective is to remove (or limit) the *possibility* of any personal influence (either directly or indirectly) which might bear on an official's decision. **Id at 314.**

- *In view of the purposes of our conflict-of-interest statutes, it is well established that their scope is not limited to instances of actual fraud, dishonesty, unfairness or loss to the governmental entity, and criminal responsibility is assessed without regard to whether the contract in question is fair or oppressive.* **Id at 314.** Thus, it has been repeatedly held that such matters are irrelevant under section 1090. **Id at 314.** In enacting the conflict-of-interest provisions, the Legislature was not concerned with the technical terms and rules applicable to the making of contracts, but instead sought to establish rules governing the conduct of governmental officials. **Id at 314.** Accordingly, those provisions cannot be given a narrow and technical interpretation that would limit their scope and defeat the legislative purpose. Thus, in *Stigall* v. *City of Taft, supra,* where a member of the city council participated in preliminary matters leading to the adoption of a contract but

21
COMPLAINT

resigned before the formal award of the contract, the court refused to construe the word "made" in a narrow and technical sense and instead held that it encompassed the planning, preliminary discussion, compromises, drawing of plans and specifications and solicitation of bids that led up to the formal making of the contract. Id at 315. See also *Thomson* v. *Call, supra,* 38 Cal.3d at pp. 644-645 [successive contracts were considered part of a single multiparty agreement for purposes of section 1090]. Id at 315.

- In a similar vein, the term "financially interested" in section 1090 cannot be interpreted in a restricted and technical manner. Id at 315. The law does not require that a public officer acquire a transferable interest in the forbidden contract before he may be amenable to the inhibition of the statute, nor does it require that the officer share directly in the profits to be realized from a contract in order to have a prohibited interest in it. Id at 315. Rather, the instant statutes are concerned with any interest, other than perhaps a remote or minimal interest, which would prevent the officials involved from exercising absolute loyalty and undivided allegiance to the best interests of the state. Id at 315. The fact that the officer's "interest" might be small or indirect is immaterial so long as it is such as deprives the state of his overriding fidelity to it and places him in the compromising situation where, in the exercise of his official judgment or discretion, he may be influenced by personal considerations rather than the public good. Id at 315. And we must

disregard the technical relationship of the parties and look behind the veil which enshrouds their activities in order to discern the vital facts. **Id at 315.** However devious and winding the trail may be which connects the officer with the forbidden contract, if it can be followed and the connection made, a conflict of interest is established. **Id at 315.**

- Moreover, prohibited financial interests are not limited to express agreements for benefit and need not be proven by direct evidence. **Id at 315.** Rather, forbidden interests extend to expectations of benefit by express or implied agreement and may be inferred from the circumstances. **Id at 315.** The types of financial interests prohibited by section 1090 are many and varied. **Id at 315.** We cite only a few representative samples. **Id at 315.**

- In *Nielsen* v. *Richards* (1925) 75 Cal. App. 680 [243 P. 697], the county superintendent of schools entered into a contract appointing his wife as supervising teacher of rural schools with a salary and expenses. **Id at 316.** The Court of Appeal concluded that, in view of the mutual obligations of support inherent in a marriage, the superintendent had an interest in the contract even though he had previously agreed that any money earned by his wife under the contract would be her separate property. **Id at 316.**

- In *People* v. *Markham* (1883) 64 Cal. 157 [30 P. 620] …, a police officer was charged with asking for and receiving a $15 bribe on the understanding that he would not arrest persons for violation of the gaming laws. **People v.**

23
COMPLAINT

Diedrich, 31 Cal.3d 263, 276 (1982). On appeal, Markham contended that no evidence was introduced showing that anyone had committed the crime for which he had agreed not to arrest. **Id.** Affirming the conviction, this court said: "We think when a police officer receives money in consideration of his promise that he will not arrest any one of a class of offenders against the criminal laws, he is guilty of receiving a bribe because the case of one who has committed the offense, and the consequent duty of the officer to arrest is `a matter which *may* be brought before him in his official capacity.' Id. We are of the opinion that a police officer who shall receive a weekly stipend, or a single payment of money, in consideration of his promise not to arrest any violator of the gaming law, is not only morally guilty, but may be found guilty under the *statute.* Id citing *Markham, supra,* at p. 159.

The Democratic Party and Vice President Harris received $220,000,000.00 from a fund controlled by George Soros to fund tumult through the Black Lives Matter movement to topple Donald Trump. See **Appendix L.** This "up front" payment of $220,000,000.00 from Democratic Donors is really a "slush fund" tied into the illegal funds Current California Attorney General Xavier Becerra and former California Attorney General Kamala Harris were unwilling to recover on the behalf of the County of San Diego (or State of California). This $220,000,000.00 is a quid pro quo related to Vice President Harris' on-going political ties to financier George Soros-ties that existed when she was California Attorney General.

- Former California Attorney General Kamala D. Harris (and a former aide Lenore Anderson) were deeply involved in California criminal policy legislation funded by George Soros. See **Appendix M, page 4, second paragraph.** Vice President Harris is a George Soros Lackey.

- Vice President Harris refused to bring a civil enforcement action against One West Bank for its illegal foreclosure practices. See **Appendix N.**

- One West Bank was owned by a trust company (IMB Holdco) controlled by billionaires Steven Mnuchin, Christopher Flowers, John Paulson, Michael Dell and George Soros. **Appendix N, page 9, key executives and investors** section.

- Vice President Harris could have commenced a civil enforcement action against One West Bank to use subpoena powers to investigate One West Bank for its foreclosure practices. (**Cuomo v. Clearing House Assn, L.L.C. 557 U.S. 519, 536 (2009)**; but she refused. Her investigators prepared a sample complaint. **Appendix O.**

- If Steven Mnuchin is in jail, he cannot work in the Treasury Department.

I was denied recognition as a County of San Diego employee entitled to pension and other employee benefits resulting from former AG Harris intentionally failing to assist the District Attorneys in California with forcing County and municipal entities in the state of California to recover the illegal payments County

and municipal entities paid to private transportation companies illegally doing business in California. One government entity received a tax refund of approximately 100 million dollars and **saved** 25 million dollars annually in social security taxes when the government entity stop illegally letting public transportation services. **Silver v. Los Angeles County Metropolitan Transportation Authority (2000) 79 CalApp.4th 338, 343.**

### California Government Code Section 31451

The purpose of this chapter is to recognize a public obligation to county and district employees who become incapacitated by age or long service in public employment (and its accompanying physical disabilities) by making provision for retirement compensation and death benefits as additional elements of compensation for future services, and to provide a means by which public employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed.

### California Attorney General Xavier Becerra

AG Becerra knew about former AG Harris' malfeasance as late as October 5, 2020 when I filed my second qui tam lawsuit in San Francisco, California. See **Appendix P.** My proof of service on the California Department of Justice (False

Claims Unit) is attached. See **Appendix Q**. AG Becerra failed to arrest Vice

President Kamala D. Harris for violating California Penal Code §§ 424(a), 484(a),

503, and 504 during the 2020 presidential election. Afterwards, AG Becerra

received a quid pro quo from President Joe Biden when President Joe Biden

nominated AG Becerra to lead the Department of Health and Human Services. A

public official's acceptance of a bribe is per se material because it demonstrates

dishonesty and unfitness for public duty, and it undermines the integrity of public

office. **People v. Wong, 186 Cal.App.4th 1433, 1452 (2010)**. It is also a misuse of

public funds, a diversion of public service. **People v. Battin, 77 Cal.App.3d 635, 650**

**(1978)**. AG Becerra profited from former AG Harris' misuse of California taxpayer

dollars violating California Penal Code § 424(a)(2). Both AG Becerra and former AG

Kamala D. Harris violated 18 U.S.C. § 1956(a)(3) and 18 U.S.C. § 666 (a)(1)(A).

Former County Counsel John J. Sansone also violated18 U.S.C. § 666 (a)(1)(A).


    **18 U.S.C. § 666**

    (a)Whoever, if the circumstance described in subsection (b) of this section

exists—

    (1) being an agent of an organization, or of a State, local, or Indian tribal

government, or any agency thereof—

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

(i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or

(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; or

(2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

(d) As used in this section—

(1) the term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative;

(2) the term "government agency" means a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program;

(3) the term "local" means of or pertaining to a political subdivision within a State;

(4) the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(5) the term "in any one-year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense.

The Department of Justice (State of California) annual federal financial assistance exceeds $10,000.00. See **Appendix R, page 4, item 24.**

The County of San Diego receives federal funding in excess of $10,000.000 a year. See **Appendix S, pages 1 through 7.**

The daily operations of County and municipal transit operators is supported by billions of dollars in Federal Transportation Assistance funds going back to the 1970's. See **Appendix T, page 4, line 24.**

Independent Contractors are agents of local government agencies. **U.S. v. Hudson, 491 F.3d 590, 595 (6th Cir. 2007).** FirstGroup America, Inc. was an independent contractor for the County of San Diego.

The statute of limitations for prosecuting a violation of 18 U.S.C. § 1956(a)(3) and 18 U.S.C. § 666 is five years. 18 U.S.C. § 3282. The statute of limitations began to run in January of 2017 when Vice President Harris ended her tenure as California Attorney General.

SECOND CAUSE OF ACTION

42 U.S.C § 1983

VICE PRESIDENT KAMALA D. HARRIS

CALIFORNIA ATTORNEY GENERAL XAVIER BECERRA

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

30
COMPLAINT

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. 1983.

To assert a claim under 42 U.S.C. § 1983, plaintiff must demonstrate that he was deprived of a constitutional right by a person acting under color of law. *Anthony v. County of Sacramento Sheriff's Dept.*, 845 F.Supp. 1396, 1400 (E.D.Cal. 1994). A person acts under color of law for purposes of 42 U.S.C. § 1983 if he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." **Id.**  Employment by the state is relevant, but not conclusive, to the question of color of law. **Id.**


Acting Under the Color of Article V, § 13 of the California Constitution

Former California Attorney General Kamala D. Harris and current California Attorney General Xavier Becerra were "Top Cops" for the State of California from January 2011 to the present.

Deprivation of Constitutional Right

As stated in **People v. Battin**, 77 Cal.App.3d 635, 652-653 (1978): "Every court which has addressed the issue to date has found the use of public funds for partisan campaign purposes improper, either on the ground that such use was not explicitly authorized, or on the broader ground that such expenditures are never appropriate. **Id at 652**. Underlying this uniform judicial reluctance to sanction the use of public funds for election campaigns rests an implicit recognition that such expenditures raise potentially serious *constitutional* questions. **Id at 652**. A fundamental precept of this nation's democratic electoral process is that the government may not "take sides" in election contests or bestow an unfair advantage on one of several competing factions. **Id at 652**. A principal danger feared by our country's founders lay in the possibility that the holders of governmental authority would use official power improperly to perpetuate themselves, or their allies in office **Id at 652**. The selective use of public funds in election campaigns, of course, raises the specter of just such an improper distortion of the democratic electoral process. **Id at 652**. To date, the judicial decisions have uniformly held that *the use of public funds for campaign expenses is as improper* in a bond issue or other non-candidate elections *as in a candidate election*. **Id at 652**. In light of this recent pronouncement by our Supreme Court, as well as the other authorities cited above, we cannot agree with defendant that the use of a publically funded staff for campaign purposes is "sanctioned" by the law, written or unwritten. **Id at 653**.

Section 424 has been on the books since 1872 and has been utilized in the past against officials who used public funds for political campaigns. **Id at 653.** A diversion of public services constitutes a misuse of public funds. **Id at 650.**

Please incorporate by reference the first cause of action as if restated verbatim herein.

THIRD CAUSE OF ACTION

DECLARATORY JUDGMENT

PRESIDENT JOE BIDEN

SENATOR ALEX PADILLA

CONGRESSWOMAN NANCY PELOSI

28 U.S.C. § 2201(a)

Please incorporate by reference the points and authorities from the first cause of action as if restated verbatim herein.

**First Declaration**

I am seeking a declaratory judgment that former California Secretary of State Alex Padilla illegally awarded California's 55 Electoral College votes to the Democratic Party during the 2020 presidential election in violation of California Elections Code §§ 18002 and 5102. California Elections Code § 5102 prohibits the Democratic Party from being recognized in California during the 2020 presidential

33
COMPLAINT

election. California Elections Code §§ 18002 and 5102 are mandated by the California Constitution.


### California Elections Code § 18002

Every person charged with the performance of any duty under any law of this state relating to elections, who willfully neglects or refuses to perform it, or who, in his or her official capacity, knowingly and fraudulently acts in contravention or violation of any of those laws, is, unless a different punishment is prescribed by this code, punishable by fine not exceeding one thousand dollars ($1,000) or by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years, or by both that fine and imprisonment.

On December 30, 2020, I emailed a copy of my second complaint (filed with the Federal Elections Commission) to the California Secretary of State's office. A copy of the email is attached. See **Appendix U**.


### California Elections Code § 5102

No party shall be recognized or qualified to participate in any primary election that either directly or indirectly carries on, advocates, teaches, justifies, aids, or abets the overthrow by any unlawful means of, or that directly or indirectly carries on, advocates, teaches, justifies, aids, or abets a program of sabotage, force and violence, sedition or treason against, the government of the United States or of this state.

Article II, § 4 of the California Constitution

The legislature shall prohibit improper practices that affect elections.

Article VII, § 8(b) of the California Constitution

[The privilege of free suffrage shall be supported by laws regulating elections and prohibiting, under adequate penalties, all undue influence thereon from power, bribery, tumult, or other improper practice.]

Article I, § 26 of the California Constitution

Article I, § 26 of the California Constitution states: "The provisions of this Constitution are mandatory and prohibitory unless by express words they are declared to be otherwise." **Katzberg v. Regents of University of California, 127 Cal.Rptr.2d 482, 486 (2002).** [Under this provision, all branches of government are required to comply with constitutional directives or prohibitions. Id. As we observed more than a century ago, every constitutional provision is self-executing to this extent that everything done in violation of it is void. Id.]

Accordingly, the question posed in this case is not whether article I, section 7(a) is self-executing. Id. [It is clear that the due process clause of article I, section 7(a) *is* self-executing and even without any effectuating legislation, all branches of government are required to comply with its terms. Id. Furthermore, it also is clear that like many other constitutional provisions, this section supports an action

brought by a private plaintiff against a proper defendant for declaratory relief or for an injunction.

The theft of California taxpayer funds discussed in the first cause of action is a violation of California Elections Code § 5102 (sabotage). Please incorporate by reference the first cause of action as if restated verbatim herein.

Also, President Joe Biden gave Black Lives Matter concessions in the DNC platform during the 2020 election. See **Appendix V**. Black Lives Matter extensive force, violence, rebellion tumult, and insurrection was aimed at sabotaging (deliberately damaging) President Trump's bid to get re-elected. The extensive force, violence, rebellion tumult, and insurrection led to 25 deaths. See **Appendix W**. This extensive force, violence, rebellion, tumult, and insurrection is prohibited by California Elections Code 5102.

Violating California Elections Code § 5102 proves President Joe Biden is not mentally fit to be President. Joe Biden was Vice President from 2008 to 2016. He should have already known about the qualification requirements listed in California Elections Code § 5102. Did he forget the requirements? If he can't remember the qualifications to be President, how can he perform the tasks required of the Office of the Presidency? The California Elections Code requirement is listed on page 4 of the General Information Section, Item A, of California's "Summary of Qualifications and Requirements for the Office of the United States President, Democratic Party". See **Appendix X**.

Vice President Harris also violated California Elections Code § 5102. The link to her Black Lives Matter video is c-span.org/video/?c4909862/user-clip-kamala-praises-brilliance-black-lives-matter. Black Lives Matter extensive force, violence, rebellion and insurrection caused civil unrest in Oregon (Portland), Wisconsin, Georgia (Atlanta), and Minnesota. According to multiple reporters affiliated with Fox News, Vice President Harris' campaign contributions were being used during the 2020 presidential election to bail some members of the "Black Lives Matter" movement out of jail. Also, Vice President Harris knew about the California Elections Code requirement listed on page 4 of the General Information Section, Item A, of California's "Summary of Qualifications and Requirements for the Office of the United States President, Democratic Party". Vice President Harris won her senate race in 2016 from the state of California.

**Second Declaration**

I am seeking a declaratory judgment that Senator Padilla is not qualified to serve as Senator because Senator Padilla engaged in crime in violation of California Elections Code § 18002 and Article II, § 4 of the United States Constitution. Senator Padilla should be expelled from the Senate.

Senator Padilla illegally awarded California's 55 Electoral College votes to the Democratic Party during the 2020 presidential election in violation of California Elections Code §§ 18002 and 5102. California Elections Code § 5102 prohibits the

Democratic Party from being recognized in California during the 2020 presidential election. California Elections Code §§ 18002 and 5102 are mandated by the California Constitution.

### Third Declaration

I am seeking a declaratory judgment that President Joe Biden gave California Attorney General Xavier Becerra a bribe (a quid pro quo in the form of a nomination to lead the Department of Health and Human Services) as payment for not bringing criminal charges against Vice President Harris during the 2020 presidential election in violation of in violation of Article II, § 4 of the United States Constitution; 18 U.S.C. § 666 (a)(1)(2); and 18 U.S.C. § 201(c)(1)(B). AG Becerra would have ended Joe Biden's presidential run if he had filed criminal charges against Vice President Harris. California Attorney General Xavier Becerra violated 18 U.S.C. § 201(c)(1)(B) for accepting the bribe (quid pro quo) from President Biden. See US v. Grubb, 11 F.3d 426, 434 (1993) citing 18 U.S.C. § 666 (a)(1)(2) and 18 U.S.C. § 201. The legal authority for 18 U.S.C. § 666 (a)(1)(2) is listed in the first cause of action.

### 18 U.S.C. § 201(c)(1)(B)

(c) Whoever—

(1) otherwise than as provided by law for the proper discharge of official duty—

(B) being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly … receives, accepts … anything of value personally for or because of any official act performed or to be performed by such official or person; shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(a)(1)(2)(3)

(a) For the purpose of this section—

(1) the term "public official" means Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror;

(2) the term "person who has been selected to be a public official" means any person who has been nominated or appointed to be a public official, or has been officially informed that such person will be so nominated or appointed; and

(3) the term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending,

or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

AG Becerra's quid pro quo is a conflict of interest in violation of California Government Code §§ 1090 and 1097. These code sections were discussed earlier in the first cause of action.

AG Becerra failed to arrest Vice President Kamala D. Harris for violating 18 U.S.C. § 666 (a)(1)(A) and California Penal Code §§ 424(a), 484(a), 503, and 504 during the 2020 presidential election as discussed in the first cause of action. AG Becerra should have reported Vice President Harris' crimes to the Federal Bureau of Investigation. See **Appendix Y.**

**Fourth Declaration**

I am seeking a declaratory judgment that current President Joe Biden received a kickback related to his tenure as Vice President during Barack Obama's presidency. President Joe Biden engaged in bribery in violation of Article II, § 4 of the United States Constitution when he was Vice President during Barack Obama's presidency. The United States Justice Department forced former Vice President Spiro Agnew to resign from office when the United States Justice Department discovered Vice President Agnew was engaging in crime.

As stated in **People v. Battin**, 77 Cal.App.3d 635, 652-653 (1978): "Every court which has addressed the issue to date has found the use of public funds for

partisan campaign purposes improper, either on the ground that such use was not explicitly authorized, or on the broader ground that such expenditures are never appropriate. **Id at 652.** Underlying this uniform judicial reluctance to sanction the use of public funds for election campaigns rests an implicit recognition that such expenditures raise potentially serious constitutional questions. **Id at 652.** A fundamental precept of this nation's democratic electoral process is that the government may not "take sides" in election contests or bestow an unfair advantage on one of several competing factions. **Id at 652.** A principal danger feared by our country's founders lay in the possibility that the holders of governmental authority would use official power improperly to perpetuate themselves, or their allies in office **Id at 652.** The selective use of public funds in election campaigns, of course, raises the specter of just such an improper distortion of the democratic electoral process. **Id at 652.** To date, the judicial decisions have uniformly held that *the use of public funds for campaign expenses is as improper* in bond issue or other non-candidate elections *as in candidate elections.* **Id at 652.** In light of this recent pronouncement by our Supreme Court, as well as the other authorities cited above, we cannot agree with defendant that the use of a publically funded staff for campaign purposes is "sanctioned" by the law, written or unwritten. **Id at 653.** Section 424 has been on the books since 1872 and has been utilized in the past against officials who used public funds for political campaigns. **Id at 653.** A diversion of public services constitutes a misuse of public funds. **Id at 650.**

18 U.S.C. § 201(a)(1)(2)(3)

(a) For the purpose of this section—

(1) the term "public official" means Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror;

(2) the term "person who has been selected to be a public official" means any person who has been nominated or appointed to be a public official, or has been officially informed that such person will be so nominated or appointed; and

(3) the term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.


18 U.S.C. § 201(b)(2)(A)

(b) Whoever— ...

(2) being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for: (A)

being influenced in the performance of any official act; shall be fined under this title or not more than three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

As stated in the attached U.S. Senate Committee on Finance Majority Staff Report: "In 2016, Ukraine's top prosecutor Viktor Shokin had an active and ongoing investigation into Burisma and its owner, Mykola Zlochevsky. At the time, Devon Archer and Hunter Biden continued to serve on Burisma's Board of Directors. Vice President Biden admitted on television he threatened to withhold $1billion in United States Loan guarantees if Ukraine's leaders did not dismiss Shokin. I saw this on television with my own eyes. After the threat, Ukraine's Parliament fired Shokin. See **Appendix Z, pages 8-9.** The "Shokin" incident occurred on or around March 29, 2016.

President Joe Biden sabotaged a corruption investigation into his son Hunter Biden by threating to withhold $1billion in United States Loan guarantees to the Ukraine. A public official owes a fiduciary duty to the public, and misuse of his office for private gain is honest services fraud. **McNally v. United States, 483 U.S. 350, 355 (1987).** Vice President Biden aided and abetted his son Hunter Biden. This is a conflict of interest that was not in the interest of the United States. This is a

violation of California Government Code § 1090 as discussed in the first cause of action.

### Fifth Declaration

I am seeking a declaratory judgment that Nancy Pelosi (House Speaker) must impeach President Biden in accordance with Article II, § 4 of the United States Constitution for engaging in crime. Please incorporate by reference the third and fourth declarations as if restated verbatim herein.

### Article II, § 4 of the United States Constitution

The President, Vice President, and all Civil Officers of the United States shall be removed from office on Impeachment for (and conviction for) treason, bribery, or other high crimes and misdemeanors.

Congresswoman Nancy Pelosi swore to uphold the laws and constitution of the United States of America when she was elected to office. She prepared articles of impeachment twice for President Trump. The second impeachment trial for former President Trump ended February 13, 2014.

### Sixth Declaration

I am seeking a declaratory judgment that Nancy Pelosi (House Speaker) must impeach Vice President Harris in accordance with Article II, § 4 of the United States

Constitution for engaging in crime. Please incorporate by reference the first cause of action as if restated verbatim herein. As I just stated, Congresswoman Nancy Pelosi swore to uphold the laws and constitution of the United States of America when she was elected to office.

### Seventh Declaration

I am seeking a declaratory judgment that Acting Attorney General Monty Wilkinson (or the newly appointed Attorney General) must bring criminal charges against former California Attorney General Kamala Harris and current Attorney General Xavier Becerra for the criminal conduct discussed in the first cause of action.

### 28 U.S.C. § 1361

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

As stated in **People v. Battin**, 77 Cal.App.3d 635, 652-653 (1978): "Every court which has addressed the issue to date has found the use of public funds for partisan campaign purposes improper, either on the ground that such use was not explicitly authorized, or on the broader ground that such expenditures are never appropriate. **Id at 652.** Underlying this uniform judicial reluctance to sanction the use of public funds for election campaigns rests an implicit recognition that such

expenditures raise potentially serious constitutional questions. **Id at 652.** A fundamental precept of this nation's democratic electoral process is that the government may not "take sides" in election contests or bestow an unfair advantage on one of several competing factions. **Id at 652.** A principal danger feared by our country's founders lay in the possibility that the holders of governmental authority would use official power improperly to perpetuate themselves, or their allies in office **Id at 652.** The selective use of public funds in election campaigns, of course, raises the specter of just such an improper distortion of the democratic electoral process. **Id at 652.** To date, the judicial decisions have uniformly held that *the use of public funds for campaign expenses is as improper* in bond issue or other non-candidate elections *as in candidate elections.* **Id at 652.** In light of this recent pronouncement by our Supreme Court, as well as the other authorities cited above, we cannot agree with defendant that the use of a publically funded staff for campaign purposes is "sanctioned" by the law, written or unwritten. **Id at 653.** Section 424 has been on the books since 1872 and has been utilized in the past against officials who used public funds for political campaigns. **Id at 653.** A diversion of public services constitutes a misuse of public funds. **Id at 650.**

- Former Illinois Government Rod Blagojevich was sentenced to prison for 20 years for trying to sell the "Senate Seat" created by Barack Obama's presidential win;

46
COMPLAINT

- John Joseph Connolly Jr. (former Federal Bureau of Investigation agent) was convicted of racketeering, obstruction of justice, and murder charges for protecting Whitey Bulger, Steve Flemmi, and the Winter Hill Gang from prosecution by supplying the trio with information about possible attempts to catch them. He received 10 years; and

- Two former New York City Cops were convicted of murder for killing for the Mafia while wearing the badge.

**Eighth Declaration**

I am seeking a declaratory judgment that Acting United States Attorney General Monty Wilkinson (or the newly appointed United States Attorney General) must bring criminal charges against President Joe Biden for the criminal conduct discussed in the third and fourth declarations. Please incorporate by reference the points and authorities from the seventh declaration as if restated verbatim herein.

I am asking the United States District Court (District of Columbia) to follow the example set by Vice President Harris when she was a California District Attorney in San Francisco CA. Vice President Harris sentenced Ed Jew (former County of San Francisco Supervisor) for lying about his residency when he was a San Francisco Supervisor. Jew claimed he resided in San Francisco when he did not. Vice President

Harris described Ed Jew's case as "about protecting the integrity of our political process which is part of the core of our democracy". See **Appendix AA, pages 1 and 2.**

## FOURTH CAUSE OF ACTION

## 42 U.S.C. § 1988

## REMEDIES

(a)APPLICABILITY OF STATUTORY AND COMMON LAW

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

**First Remedy**

I am asking the court to declare public transportation contracts let by County and municipal entities to private persons (or bodies) in the state of California void in violation of Article XI, Section 11 of the California Constitution; and Article I, § 26 of the California Constitution. One government entity received a tax refund of approximately 100 million dollars and **saved 25 million dollars annually in social security taxes** when the government entity stop "contracting out" public transportation services. **Silver v. Los Angeles County Metropolitan Transportation Authority (2000) 79 CalApp.4th 338, 343.**

**Article XI, Section 11 of the California Constitution**

[Article XI, Section 11 of the California Constitution provides that "the legislature may not delegate to a private person (or body) power to make, control, appropriate, supervise, or interfere with county or municipal corporations improvements, money, or property, ... or perform municipal functions.] **Yarnell v. City of Los Angeles, 87 Cal 603, 607 (1891).** The only method proposed to avoid this provision is to say that while the legislature may not do the thing prohibited, it may authorize its creatures-municipal corporations-to do it. **Id.** But the thing which the legislature is forbidden to do, it cannot delegate to another to do unless such power is given by the constitution itself. **Id.** Yarnell was cited in Howard Jarvis Taxpayer's

Assn. v. Fresno Metropolitan Projects Authority (1995) 40 Cal.App.4th 1359, 1375. Yarnell has been on the books for almost 130 years.

### Article I, § 26 of the California Constitution

Article I, § 26 of the California Constitution states: "The provisions of this Constitution are mandatory and prohibitory unless by express words they are declared to be otherwise." **Katzberg v. Regents of University of California, 127 Cal.Rptr.2d 482, 486 (2002).** [Under this provision, all branches of government are required to comply with constitutional directives or prohibitions. Id. As we observed more than a century ago, every constitutional provision is self-executing to this extent that everything done in violation of it is **void. Id.**]

Accordingly, the question posed in this case is not whether article I, section 7(a) is self-executing. **Id.** [It is clear that the due process clause of article I, section 7(a) *is* self-executing and even without any effectuating legislation, all branches of government are required to comply with its terms. Id. Furthermore, it also is clear that like many other constitutional provisions, this section supports an action brought by a private plaintiff against a proper defendant for declaratory relief or for an injunction.

Second Remedy

I am asking the court to order the County of San Diego to comply with County of San Diego Board of Supervisors Policy A-120 and classify me as a County of San Diego employee on or around September 23, 1997. Former San Diego County Counsel John J. Sansone was an agent of the County of San Diego. Counsel Sansone refused to recover the illegal payments First Group America, Inc. received from the County of San Diego when the County of San Diego illegally let public transportation contracts in violation of Article XI, Section 11 of the California Constitution and the San Diego County Charter. County of San Diego employees (and agents) let public transportation service contracts in violation of County of San Diego Board of Supervisors Policy A-120. The contracts are void as discussed in the first cause of action.

County of San Diego Board of Supervisors Policy A-120

Purpose

To establish a policy throughout the County of San Diego that fraud will not be tolerated in County government.

Background

The Board of Supervisors and County Officials strive to protect against all

improprieties in public programs and services. Integrity in the administration of County programs and services must exist to ensure the public's trust. Numerous actions have been taken to prevent and deter fraud and abuse, which demonstrate commitment to protecting the public interest in essential public programs and services. This policy declares the Board of Supervisors intent that there shall be "Zero Tolerance" for fraud in County programs and services.

Definitions

Fraud is an intentional (1) perversion of truth for the purpose of inducing another in reliance upon the falsehood to part with something valuable or to surrender a legal right, or (2) false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so " that the person shall act upon it to his or her injury.

Zero Tolerance means that County officials will not tolerate fraud in County government and shall take appropriate action, up to and including removal of an officer or employee from County service or the cancellation of a contract, when the officer, employee; or contractor of the County has committed fraud in connection with the administration of County programs or the provision of

County services.

Policy

It is the policy of the Board of Supervisors that:

1.   There shall be "Zero Tolerance" for fraud committed by County officers, employees, or contractors in the administration of County programs and the provision of County services. This "Zero Tolerance" for Fraud Policy shall be reflected in all County programs, including legislative activity, eligibility procedures, applicant identification, employee training, and supervision.

2.   Appointing authorities of the County will not tolerate fraud in County government and **shall take appropriate action, up to and including removal from County service, when any officer or employee of the County is found to have committed fraud in connection with the administration of County programs or the provision of County services.**

3.   Contracts between the County and independent contractors which provide for the independent contractors to administer County programs or provide County Services shall include provisions for the cancellation of the contract by the County when there are proven instances of fraud committed by the independent contractors in connection with their performance under the contract. The appropriate County officials overseeing these contracts will not

tolerate fraud in County government and shall take appropriate action, up to and including the cancellation of contracts, when independent contractors are found to have committed fraud in connection with their performance under the contract. **See Appendix AB, pages 1 and 2.**

### Third Remedy

I am asking the court to order California Attorney General Xavier Becerra (or the Acting California Attorney General) to bring criminal charges against Vice President Kamala D. Harris. Please incorporate by reference the first and second cause of actions as if restated verbatim herein.

### Fourth Remedy

I am asking the court to take judicial notice that I may have to file an amended complaint to add additional facts, remedies, and damages.

### (b)ATTORNEY'S FEES

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.

2000d et seq.], or section 12361 of title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

I am asking the court to award me attorney fees, if appropriate.


(c) EXPERT FEES

In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

I am asking the court to award me expert witness fees, if appropriate.


## VERIFICATION

I, Kevin L. Perry, am Plaintiff in this action. The foregoing petition is true of my own knowledge, except for matters stated in it on my information or belief, and as to those matters I believe it to be true.

I do not have a plain, speedy, and adequate remedy in the ordinary course of law.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and hereby certify that the information I have given is true to the best of my knowledge and belief. I declare under penalty of perjury that the foregoing is true and correct.

Executed on 17 of February, 2021.

Kevin L. Perry In Pro Per
845 Park Ave Apt 7
El Centro, CA 92243

56
COMPLAINT